UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH COLLISIONS, LLC, § <br>    4500 Phillips Highway § <br>    Jacksonville, FL 32207 § <br> § <br> *Plaintiff*, § <br> § <br> *v.* § <br> § <br> KENWORTH OF JACKSONVILLE, INC., § <br>    833 Pickettville Road § <br>    Jacksonville, FL 32220 § <br> § <br> *Defendant.* § | Misc. Action No. _____ |

**DEFENDANT'S EXPEDITED MOTION TO QUASH PLAINTIFF'S SUBPOENA**
***DUCES TECUM* DIRECTED TO UNITED STATES POSTAL SERVICE,**
**OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER, AND**
**MOTION TO TRANSFER SUBPOENA-RELATED MOTION**

Defendant, Kenworth of Jacksonville, Inc. ("Defendant" or "Kenworth"), pursuant to Federal Rules of Civil Procedure 26 and 45 and LCvR 7(m), hereby moves to quash the Subpoenas *Duces Tecum* ("Subpoena") issued by Plaintiff, Commonwealth Collisions, LLC ("Plaintiff" or "Commonwealth"), to non-party United States Postal Service ("USPS"), and further moves pursuant to Rule 45(f) for the transfer of this motion to the United States District Court for the Middle District of Florida.[1]  In support, Kenworth states as follows:

**INTRODUCTION**

Commonwealth, a direct competitor of Kenworth in the body shop repair industry, seeks to use this litigation and its subpoena power to attempt to gain a competitive advantage and

---

[1] A true and correct copy of the Subpoena is attached hereto as **Exhibit 1**.  Commonwealth also issued non-party subpoenas to eight other non-parties that command compliance in Jacksonville, Florida.  Pursuant to Rule 45(d)(3), Kenworth has submitted its objections to these Subpoenas in the United States District Court for the Middle District of Florida, in the action styled *Commonwealth Collisions, LLC v. Kenworth of Jacksonville, Inc.*, Case No. 3:17-cv-01300-MMH-MCR, attached hereto as **Exhibit 2**, and respectfully submits that determination of this Motion would be more appropriately be heard in the court where the underlying litigation is pending.

harass Kenworth's customers. Commonwealth has sent nine subpoenas to Kenworth's customers asking for, among other items, *all* communications with Kenworth reflecting any payments made to Kenworth over a nearly *three year period*, including all quotes, bids, estimates, invoices, receipts, work orders, and bills. Such subpoenas have been served on Kenworth's customers *after* the undisputed testimony in the case revealed that the incident at the heart of Commonwealth's Complaint was limited to a four-day period (September 26-29, 2017), involving eleven[2] estimates to seven customers – an incident that Commonwealth's corporate representative testified actually brought him new work he did not otherwise have.

Putting aside that the acts in question did not damage Commonwealth's company and in fact led to it obtaining work it would not have otherwise received, Commonwealth now attempts to interfere with and damage the business relationships Kenworth has established with its customers by using courts' subpoena power to continue this case that seemingly has little to no merit. Despite that fact that there is undisputed testimony concerning the scope of the estimates sent with the mistaken Commonwealth header over a four-day time period, Commonwealth issued these subpoenas because it believes, contrary to evidence in the case, that Kenworth is engaged in persistent and ongoing fraud calculated to deprive Commonwealth of work in the industry by submitting fraudulent estimates on Commonwealth's behalf. However, Commonwealth has no basis for this position and is engaging in a fishing expedition in hopes of finding something that does not exist. Indeed, some of the subpoenas sent by Commonwealth

---

[2] All eleven estimates that were mistakenly sent to seven customers have been previously produced to Commonwealth. The initial estimate that led to these eleven estimates being sent with the mistaken Commonwealth header on them was deleted because the customer indicated he was not planning to have anyone complete the work on his vehicle.

are to customers who did not even receive one of the eleven estimates with the mistaken header and must have been sent for what can only be explained as harassment purposes.[3]

Commonwealth's subpoenas to Kenworth's customers seek the following information:

> 1. All documents and communications exchanged between you and Kenworth that refer to or mention Commonwealth from January 1, 2016 to the present.
> 2. All quotes, bids, estimates, invoices, receipts, work orders, or bills submitted to you from Kenworth from January 1, 2016 to the present.
> 3. All documents and communications reflecting any payments made by you to Kenworth from January 1, 2016 to the present.
> 4. Other than communications between you and your attorney, all documents and communications concerning any false or fraudulent documents or estimates you received from Kenworth.
> 5. Other than communications between you and your attorney, all documents and communications concerning the above-cited lawsuit.

By way of background and as briefed in Kenworth's Motion to Dismiss, the estimates generated during this four-day period and submitted to customers by Gary Tittle, Kenworth's Body Shop manager at the time, had Commonwealth's name, address, and phone number in the header. The remaining information contained in these estimates, however, related to Kenworth, including the appearance and format for the estimate (which Kenworth's customers are used to seeing), the name and email address of the Body Shop manager, the telephone number, the rates, and the parts charges. Mr. Tittle, who acted outside of the scope of his employment when he changed the header to show Commonwealth's information, led to the creation of the eleven estimates that were issued to seven customers. As soon as the mistake was discovered, it was

---

[3] Subpoenas were served on Auto Owners Insurance, USPS, Heartland, Penske Auto, and Pack-rat, but the undisputed evidence shows that none of these customers received any of the eleven estimates with the mistaken header.

corrected.  No customers were confused by the incorrect headers,[4] and Mr. Tittle was disciplined by Kenworth for his unauthorized actions and no longer works at Kenworth.

Through the course of discovery, Kenworth has provided all non-privileged, responsive documents in its possession, which clearly demonstrate that the eleven estimates were an isolated incident, affecting a small handful of customers, which had never occurred before and has not occurred since.  Despite this, Commonwealth seeks duplicative and redundant discovery it has already obtained from Kenworth.  Furthermore, Commonwealth seeks to abuse the discovery process by conducting a fishing expedition for Kenworth's pricing, communications, and pricing methodology with its customers, which is confidential and proprietary information that would place Kenworth at a competitive disadvantage if obtained by its direct competitor.

## MEMORANDUM OF LAW

In the instant case, determination of whether the Subpoena should be quashed should be transferred to the United States District Court of the Middle District of Florida ("Middle District"), the court which issued the Subpoena and which has jurisdiction over the underlying litigation.  *See* Fed. R. Civ. P. 45(f).  Plaintiff's counsel has served eight additional non-party subpoenas to which Kenworth has objected, which command compliance in Jacksonville, Florida. Pursuant to Rule 45(d)(3), the Middle District is the appropriate court to determine whether those subpoenas should be quashed or modified or whether a protective order should be issued.  Notably, the documents which Commonwealth has demanded USPS produce are *identical* to the document requests of the other eight subpoenas at issue, and accordingly, Kenworth's objections to the USPS Subpoena are substantially identical as well.  There is a risk that this Court and the Honorable Marcia Morales Howard, who is presiding over the underlying

---

[4] *See generally* Defendant's Motion to Dismiss or for a More Definite Statement and Supporting Memorandum of Law.  Doc. 8 in the underlying litigation.

4

litigation in the Middle District, will issue inconsistent rulings regarding identical objections raised by Kenworth. This would ultimately interfere with Judge Howard's management of the underlying litigation, and militates in favor of transfer of this Motion to the Middle District so that Judge Howard can rule on all nine of the identical non-party Subpoenas at the same time.

In the event this Motion is not transferred, the Subpoena should be quashed because it seeks the production of documents that contain Kenworth's confidential and proprietary information, and because the Subpoena seeks the production of documents that are irrelevant or redundant to those Commonwealth has already sought from Kenworth. Courts have often found these reasons to quash non-party subpoenas in similar situations.

## I. Standard of Review and Defendant's Standing

Rule 45 governs subpoenas directed to non-parties for discovery purposes. *See* Fed. R. Civ. P. 45. Under Rule 45, the court for the district where compliance is required "must" quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;

    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

    ***(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or***

    (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A) (emphasis added); *Manny Film LLC v. Doe*, No. 8:15-CV-496-T-35MAP, 2015 WL 12862914, at *1 (M.D. Fla. May 26, 2015) ("Indeed, a court must quash or modify a subpoena where the subpoena requires disclosure of privileged or other protected matter and if no exception or waiver applies.").

Rule 45 further provides that the court for the district where compliance is required may quash or modify a subpoena in order "[t]o protect a person subject to or affected by a subpoena" that requires:

> (i) ***disclosing a trade secret or other confidential research, development, or commercial information***; or
>
> (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in disputes and results from the expert's study that was not requested by a party.

Fed. R. Civ. P. 45(d)(3)(B) (emphasis added).

A party has standing to move to quash a subpoena directed to a non-party if that party alleges a "personal right or privilege" with respect to the subpoena. *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("The law governing courts in the Eleventh Circuit, however, is somewhat broader, and standing exists if the party alleges a 'personal right or privilege' with respect to the subpoenas."); *see Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979).[5] In addition, where a subpoena seeks documents that a party contends contain confidential commercial or financial information or proprietary information, that party has standing to move to quash the subpoena. *Medi-Weightloss Franchising USA, LLC v. Medi-Wieghtloss Clinic of Boca Raton, LLC*, No. 8:11-CV-2437-T-30MAP, 2012 WL 12904394, at *3 (M.D. Fla. May 10, 2012) ("A party has standing to object to a non-party subpoena duces tecum with respect to privilege, trade secrets, confidential research, commercial information, or similar grounds personal to a party.").

Furthermore, "pursuant to Rule 26(c), a party has standing to move for a protective order if a subpoena to a non-party seeks irrelevant information." *Trahan v. Sandoz Inc.*, No. 3:13-CV-

---

[5] In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

350-J-34MCR, 2014 WL 12628614, at *2 (M.D. Fla. July 23, 2014) (Richardson, M.J.); *Auto-Owners Ins. Co.*, 231 F.R.D. at 429 ("As parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information."). In that regard, district courts have quashed subpoenas, on motion by a party, where the subpoenas appear redundant to other discovery requests in the case and may be viewed as an attempt to circumvent the party to obtain privileged information. *See Maxtena, Inc. v. Marks*, No. CIV.A. DKC 11-0945, 2014 WL 4384551, at *12 (D. Md. Sept. 2, 2014) (overruling objections to a Magistrate Judge's ruling and stating, "Judge Connelly first wrote that Maxtena's already existing obligation to produce relevant, nonprivileged documents pursuant to Marks's second request for production of documents makes the Cooley subpoena 'redundant and may be viewed as an attempt to circumvent Maxtena to obtain privileged information Marks is not entitled to receive.' . . . The Cooley subpoena was redundant because Marks requested that Maxtena produce any responsive documents within its 'control,' a term Marks himself defined to include Maxtena's agents, representatives, and attorneys.").

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c). "The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege." *Auto-Owners Ins. Co.*, 231 F.R.D. at 429; *accord Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985) ("Rule 26(c) gives the district court discretionary power to fashion a protective order. The decision does not depend upon a legal privilege.").

II. **Determination of Kenworth's Motion to Quash the Subpoena or, in the alternative, for Protective Order, should be heard by the Middle District, the court where the underlying action is pending.**

Rule 45(f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." The Advisory Committee Notes concerning Rule 45 provide that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f) advisory committee's notes.

This Court has found that "exceptional circumstances" are satisfied when there is a likelihood of inconsistent rulings on motions to quash pending in district courts, and that the "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014); *see also Duck v. SEC*, 317 F.R.D. 321, 323-25 (D.D.C. 2016) (noting that "[i]n determining whether 'exceptional circumstances' exist, courts consider several factors, including the 'complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'") (citations omitted); *Lipman v. Antoon*, 284 F. Supp. 3d 8, 12-13 (D.D.C. 2018) (finding that it is the "*potential* for inconsistent results" which is instructive in determining whether a subpoena-related motion should be transferred). Furthermore, determinations concerning the relevance of the subpoenaed documents weighs in favor of transferring subpoena-related motions to the issuing court. *Lipman*, 284 F. Supp. 3d at 14 ("As other courts in this Circuit have routinely recognized, '[r]uling on the subpoenaed documents' relevance would … require[ ] the Court to delve into the intricacies of the underlying dispute. Given the close relationship between the

motion to quash and the merits of the complex underlying dispute, the issuing court [would be] in a better position to rule on the motion.") (citations omitted).

Here, the USPS Subpoena requires USPS to respond to document requests that are *identical* to the subpoenas issued to eight other non-parties, and to which Kenworth has submitted a motion to quash or motion for protective order in in the underlying litigation. *See* **Composite Exhibit 3**. Judge Howard, who is presiding over the underlying litigation, will make the determination as to whether the subpoenas to the eight other non-parties should be quashed. As will be evident by Kenworth's arguments enumerated below, a determination of Kenworth's motion to quash in the underlying litigation will require a determination as to the relevance of the documents requested as well as a determination as to whether the documents sought will force the disclosure of Kenworth's confidential and proprietary commercial information. Because these issues are already before Judge Howard, Kenworth respectfully submits that she is in a better position to make a determination as to whether this identical Subpoena should also be quashed.

Furthermore, because the Subpoenas are identical, it is possible that this Court may make a determination regarding compliance with this Subpoena that is inconsistent with Judge Howard's ruling regarding the eight additional non-party Subpoenas. This could disrupt Judge Howard's management of the underlying litigation as this Court's ruling could impact substantive issues regarding the merits of the dispute. *See Lipman*, 284 F. Supp. 3d at 14. Accordingly, Kenworth submits that there are exceptional circumstances present which warrant the transfer of this Motion to the Middle District so that a ruling regarding Kenworth's objections may be made by Judge Howard.

**III.    The USPS Subpoena seeks the disclosure of Kenworth's confidential and proprietary commercial information.**

Subpoena Requests Nos. 2 – 4 impermissibly seek the disclosure of Kenworth's confidential and proprietary commercial information involving its customers.  This fishing expedition for information irrelevant to the claims of this case attempts to obtain Kenworth's confidential and proprietary commercial information with its customers for an admitted competitor in the body shop repair industry.

In order to challenge a subpoena to prevent the disclosure of confidential information, "a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful.  Once these requirements are met, the burden shifts to the other party to establish that discovery of the trade secrets or confidential information is relevant and necessary to the action.  The district court must then balance the need for protection of the trade secrets against the claim of injury resulting from disclosure.  Discovery may be denied if proof of relevancy or need is not established, but if relevancy and need are shown, the trade secret should be disclosed.  Determination of whether the need outweighs the harm of disclosure falls within the sound discretion of the trial court." *United Power Line Contractors, LLC v. Onpower, Inc.*, No. 213CV810FTM29DNF, 2014 WL 12628613, at *3 (M.D. Fla. Aug. 19, 2014) (quoting *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985)).

Subpoena Requests Nos. 2 – 4 request the following documents from USPS:

2. ***All*** quotes, bids, estimates, invoices, receipts, work orders, or bills ***submitted to you from Kenworth*** from January 1, 2016 to the present.

3. ***All*** documents and communications ***reflecting any payments made by you to Kenworth*** from January 1, 2016 to the present.

4. Other than communications between you and your attorney, ***all*** documents and communications concerning ***any*** false or fraudulent documents or estimates you received from Kenworth.

*See* Exh. 1 (emphasis added). Production of these documents and communications would lead to the disclosure of Kenworth's confidential and proprietary commercial information. Specifically, Commonwealth – a direct competitor in the field of body shop repair operating in the same geographic location – would obtain nearly three years' worth of bids and estimates submitted by Kenworth to USPS. This would provide Commonwealth with a history of the specific labor rates and discounts provided to USPS. The cumulative knowledge which Commonwealth seeks to obtain would allow it to accurately predict how Kenworth puts together a bid for available work offered by a customer. And, as Commonwealth has already acknowledged, "body and repair work is generally awarded to the company that submits the lowest bid." Doc. 1, "Complaint," ¶ 11.

Access to Kenworth's historical bid submissions, pricing methodology and billing practices would allow Commonwealth to discern Kenworth's business strategies and undercut Kenworth's bids for work to customers and would provide Commonwealth with an unfair competitive advantage. *See United Power Line Contractors, LLC v. Onpower, Inc.*, No. 213CV810FTM29DNF, 2014 WL 12628613, at *3 (M.D. Fla. Aug. 19, 2014) (quashing non-party subpoenas seeking disclosure of information concerning defendant's billing practices, contracts, rates and payroll because "[t]he disclosure of such information could impair OnPower's ability to compete in the market place of power line repair by enabling its competitors to discern its business strategies and undercut its bids. Thus, UPL, a potential competitor of OnPower (as conceded by Plaintiffs), stands to gain a competitive advantage over OnPower if the Utilities respond to the subpoenas."). Accordingly, Subpoena Requests Nos. 2 – 4 should be quashed for impermissibly seeking the disclosure of Kenworth's confidential and proprietary commercial and pricing information.

Furthermore, Commonwealth cannot meet its burden to demonstrate that the information requested in Subpoena Requests Nos. 2 – 4 are "relevant and necessary to the action." *Id.* **None** of these Subpoena Requests are limited to the claims and defenses raised by the parties in this action. Notably, these requests seek communications and documents with Kenworth's customers even if those documents and communications do not refer to or mention Commonwealth. And many of the customers who have been sent a subpoena by Commonwealth are not even customers who received one of the eleven estimates with the mistaken Commonwealth header. *See* Footnote 3 for the list of customers who have been subpoenaed who have no connection to the allegations or defenses raised by the parties. Moreover, the undisputed evidence in the case shows that those eleven estimates are the only estimates that contained the mistaken header. Simply put, the only documents or communications that are possibly relevant to this case are those submitted by Kenworth that refer to Commonwealth and Kenworth has already produced such documents in this case. All of the requests in the subpoenas for documents, communications and pricing information that does not refer to Commonwealth is not relevant to this case and should not be permitted.

**IV.   The USPS Supboena seeks irrelevant and/or redundant material that Commonwealth has already sought and obtained from Kenworth.**

The scope of discovery under Rule 45 is the same as that permitted under Rule 26. *Am. Fed'n of State, Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011); Advisory Committee Note (1970) to Rule 45 ("The changes make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Thus, a subpoena may not seek disclosure of documents that are irrelevant to the litigation. Along those lines, the Court "must" limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some source that is more

convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C); *see Bingham v. Baycare Health Sys.*, No. 8:14-CV-73-T-23JSS, 2016 WL 4467213, at *4 (M.D. Fla. Aug. 24, 2016) (denying motion to compel compliance with a non-party subpoena where the documents requested were unreasonably cumulative to prior discovery requests); *see also Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05CV1056-J-32MCR, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006) (Richardson, M.J.) ("[I]n an effort to spare third parties the expense and cost of responding to the subpoenas, the Court finds that Defendant ought to first attempt to obtain such evidence directly from Plaintiff pursuant to other available avenues under the Federal Rules of Civil Procedure."). A party has standing to move for a protective order when a subpoena seeks the production of irrelevant and redundant material. *Trahan v. Sandoz Inc.*, No. 3:13-CV-350-J-34MCR, 2014 WL 12628614, at *2 (M.D. Fla. July 23, 2014) (Richardson, M.J.); *see Maxtena, Inc. v. Marks*, No. CIV.A. DKC 11-0945, 2014 WL 4384551, at *12 (D. Md. Sept. 2, 2014).

Several of the documents requested in the Subpoena are either redundant of those already requested and obtained from Kenworth (to the extent documents existed) or irrelevant to the issues in the case. *See* Kenworth's Responses to Commonwealth's First Request for Production, attached hereto as **Exhibit 4**. Notably, as this side-by-side comparison illustrates, Subpoena Requests Nos. 1 and 5 are redundant and unreasonably cumulative of Request for Production Nos. 2[6] propounded to Kenworth:

---

[6] This list is not intended to be exhaustive. In fact, Commonwealth propounded further discovery specific to Heartland (Request for Production No. 5), FedEx (Request for Production No. 13), Dywane Bossenkool [sic] (Request for Production No. 17), Maudlin (Request for Production No. 18), and Pack-rat (Request for Production No. 19) that requested "all documents and communications" exchanged between Kenworth and these customers. As applicable, Kenworth informed Commonwealth that no non-privileged, responsive documents existed or that Kenworth would produce estimates given to those customers referring to or relating to Commonwealth, as well as any documents and communications accompanying those estimates. Any further disclosures would require Kenworth to respond to discovery not reasonably

| **Commonwealth's Subpoenas** | **Commonwealth's First Request for Production** |
|---|---|
| REQUEST NO. 1<br><br>All documents and communications exchanged between you and Kenworth that refer to or mention Commonwealth from January 1, 2016 to the present.<br><br>REQUEST NO. 5<br><br>Other than communications between you and your attorney, all documents and communications concerning the above-cited lawsuit. | REQUEST FOR PRODUCTION NO. 2<br><br>All documents and communications exchanged between you and any Potential Customers concerning any quotes, bids, estimates, invoices, receipts, work, repairs, maintenance, or labor rates that refer to or mention Commonwealth from January 2016 to the present. |

Subpoena Request No. 1 asks for "[a]ll documents[7] and communications exchanged between you and Kenworth that refer to or mention Commonwealth from January 1, 2016 to the present." *See* Exh. 1. Subpoena Request No. 1 is duplicative of Request for Production No. 2, which requested that Kenworth produce all documents and communications "concerning any quotes, bids, estimates, invoices, receipts, work, repairs, maintenance, or labor rates" referring to or mentioning Commonwealth. Furthermore, Subpoena Request No. 5 simply seeks all documents and communications related to this lawsuit. As this lawsuit concerns Kenworth's alleged submission of estimates for repair work on behalf of Commonwealth, only those estimates submitted by Kenworth which refer to or mention Commonwealth could be related to

---

calculated to lead to the discovery of admissible evidence and would risk the disclosure of Kenworth's confidential and proprietary information, *see* Section II *supra*, and allow Commonwealth, a known competitor of Kenworth's, to undercut Kenworth's bids and obtain an unfair competitive advantage. Despite Kenworth's willingness to cooperate to provide documents and communications relevant to Commonwealth's claims, Commonwealth now seeks to do an end-runaround Kenworth and obtain this confidential information from a different source. This should not be permitted.

[7] Commonwealth defines "documents," in part, as including "receipts; checks and cancelled checks; statements; ledgers; accounts; records; transcripts; . . . "reports or financial statements; work or purchase orders; . . . "books of account; vouchers; invoices; [and] bills." *See* Composite Exhibit 1, "Definitions," No. 5.

14

this lawsuit. As such, Subpoena Request No. 5 is therefore duplicative of Subpoena Request No. 1.

In response to Requests for Production No. 2 and No. 3, Kenworth stated, in relevant part:

> RESPONSE TO REQUEST FOR PRODUCTION NO. 2: . . . As stated above, Defendant has already voluntarily produced to Plaintiff each and every Commercial Truck Damage Estimate that refers to or mentions Commonwealth. Further, even though this request is overbroad and not proportional to the needs of this case, Defendant has searched its records for quotes, bids, estimates, invoices, receipts, work, repairs, maintenance, or labor rates that refer to or mention Commonwealth from January 2016 to the present, and no additional responsive documents were identified.

Exh. 4, Response to RFP No. 2. As Kenworth has already represented to Commonwealth, no documents and communications exist during the time period of January 1, 2016 to present – other than what has already been produced to Commonwealth – that refer or relate to Commonwealth between Kenworth and USPS. Accordingly, Subpoena Requests Nos. 1 and 5 are redundant and unreasonably cumulative of discovery requests which have already propounded upon Kenworth. *See Bingham v. Baycare Health Sys.*, No. 8:14-CV-73-T-23JSS, 2016 WL 4467213, at *4 (M.D. Fla. Aug. 24, 2016) (denying motion to compel compliance with a non-party subpoena where the documents requested were unreasonably cumulative to prior discovery requests).[8]

## CONCLUSION

For the foregoing reasons, Kenworth respectfully requests the entry of an Order transferring the instant Motion to the United States District Court of the Middle District of Florida, the Court which issued the Subpoena, pursuant to Rule 45(f) of the Federal Rules of

---

[8] Kenworth would further note that Subpoena Request No. 1 is inclusive of the documents sought in Subpoena Requests Nos. 2 – 4 and is therefore also duplicative and redundant.

Civil Procedure.  In the event this Motion is not transferred, Kenworth respectfully requests the entry of:

1. An Order staying production of documents until such time as this Court makes a determination regarding the instant Motion;

2. An Order quashing or modifying the Subpoenas *Duces Tecum* issued by Commonwealth Collisions, LLC to the United States Postal Service, on October 16, 2018, which commands production on November 5, 2018;

3. In the event the Subpoena is not quashed or modified, a Confidentiality Order with an attorneys' eyes only provision governing the production of documents responsive to the Subpoena; and

4. For any and such other further relief as this Court deems just and proper.

### LCvR 7(m) CERTIFICATION

The undersigned hereby certifies that counsel for Kenworth conferred in good faith with counsel for Plaintiff.  Counsel for Plaintiff has advised that they object to the requested relief.

Dated this 30th day of October, 2018.


**HOLLAND & KNIGHT LLP**

By: /s/ Rachel E. Mueller
Rachel E. Mueller (D.C. Bar No. 1033626)
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 955-3000
rachel.mueller@hklaw.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of October, 2018, the foregoing document was served via email on all counsel or parties of record.

/s/ Rachel E. Mueller
Attorney